UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENNIS JAMES MOORE,

    Petitioner,

v.            Case No. 3:09-cv-480-J-34TEM

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

## ORDER

### I. Status

Petitioner Dennis James Moore, who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) under 28 U.S.C. § 2254 on May 27, 2009, pursuant to the mailbox rule. Thereafter, Petitioner filed an Amended Petition (Doc. #11) on October 8, 2009, in which he challenges a 2006 state court (Duval County, Florida) judgment of conviction for uttering a forged bill, unauthorized possession of a driver's license or identification card, possession of a counterfeit check, and grand theft. Petitioner asserts that his guilty plea was not voluntarily and knowingly entered because no one advised him that he may be sentenced as a habitual felony offender and that such

habitualization may affect early release eligibility, and that his sentence is unconstitutional because, prior to the trial court's acceptance of his plea, he was not given notice that the State was seeking a habitual felony offender sentence.

Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause (Response) (Doc. #12).[1] On July 24, 2009, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #9), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on January 21, 2010. See Petitioner's Reply to Respondents' Answer to Show Cause Order (Doc. #15). This case is ripe for review.

## II. Procedural History

On November 23, 2005, Petitioner was charged with uttering a forged bill, unauthorized possession of a driver's license or identification card, possession of a counterfeit check, and grand theft. Resp. Ex. B at 101-02, Second Amended Information. Prior to Petitioner entering a plea of guilty, the State notified Petitioner, on June 29, 2005, and again on November 23, 2005, that the prosecution intended to seek to classify him as a habitual felony offender for purposes of an enhanced penalty. Id. at 48, 103. Petitioner entered a plea of guilty on December 30, 2005.

---

[1] The Court will refer to Respondents' exhibits as "Resp. Ex."

2

Id. at 107-08, Plea of Guilty; 183-90, Transcript of the Plea Hearing (Plea Tr.).[2]  Prior to sentencing, the State amended its notice of intent to classify him as a habitual felony offender and hand-served Petitioner with a copy of the notice on January 23, 2006.  Id. at 123, Third Amended Notice of Intent to Classify Defendant as an Habitual Felony Offender, filed February 22, 2006. On March 1, 2006, the trial court sentenced Petitioner, as a habitual felony offender, to eight years of incarceration on each count, to run concurrently to each other.  Id. at 144-52, Judgment; 191-268, Transcript of the Sentencing Hearing (Sentencing Tr.).

On appeal, Petitioner, through counsel, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).  Resp. Ex. D. Subsequently, Petitioner, through counsel, filed a Notice of Voluntary Dismissal.  Resp. Ex. E.  On May 14, 2007, the appellate court dismissed Petitioner's appeal pursuant to Florida Rule of Appellate Procedure 9.350(b).[3]  Resp. Ex. F.

On June 6, 2007, Petitioner filed a pro se motion for post conviction relief (Rule 3.850 motion) pursuant to Florida Rule of Criminal Procedure 3.850, which he subsequently amended and

---

[2] In citing to the transcripts of the hearings, this Court will refer to the page number in the lower right-hand corner of the page since it is more readily visible.

[3] Florida Rule of Appellate Procedure 9.350(b) states: "A proceeding of an appellant or petitioner may be dismissed before a decision on the merits by filing a notice of dismissal with the clerk of the court . . . ."

3

supplemented. Resp. Ex. G at 1-14, 64-68, 117-54, 167-204, 205-25. As grounds one and two, Petitioner argued that his sentence is illegal because, prior to acceptance of his plea, the trial court did not personally advise him of the possibility and reasonable consequences of habitualization, the statutory maximum penalty, the minimum mandatory penalty, or that his guilty plea was subject to habitual felony offender enhancement. Id. at 2, 3. Further, Petitioner claimed that the trial court failed to formally accept his guilty plea and failed to acknowledge the voluntariness of his plea (ground three), id. at 65, and that the Information was fraudulent because the State Attorney did not conduct a pre-filing conference and did not take sworn statements from material witnesses (ground four), id. at 119, 168-69. Additionally, Petitioner filed a pro se motion to correct illegal sentence on February 15, 2008, which he subsequently amended. Id. at 230-33, 238-41. The State responded to the Rule 3.850 motion on March 11, 2008. Id. at 248-71. On June 6, 2008, the trial court denied Petitioner's post conviction motions. Id. at 372-493.

Petitioner appealed, see id. at 494, and filed a brief. Resp. Ex. I. On January 20, 2009, the appellate court affirmed the denials per curiam. Moore v. State, 3 So.3d 1249 (Fla. 1st DCA 2009); Resp. Ex. J. The court denied Petitioner's motion for rehearing on February 27, 2009. Resp. Exs. K; L. The mandate issued on March 17, 2009. Resp. Ex. M.

4

While the post conviction motions were pending, Petitioner filed a Petition to Invoke All Writs Jurisdiction, which the Supreme Court of Florida dismissed for lack of jurisdiction on January 27, 2009. Resp. Exs. O; P; Moore v. State, 3 So.3d 317 (Fla. 2009).

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 5-8.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:
>
>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.
>
> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application'

6

> inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[4] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

---

[4] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

7

## VI. Findings of Fact and Conclusions of Law

Petitioner claims that his guilty plea was not voluntarily and knowingly entered because no one advised him that he may be sentenced as a habitual felony offender and that such habitualization may affect early release eligibility. Additionally, he asserts that his sentence is unconstitutional because, prior to the trial court's acceptance of his plea, he was not given notice that the State was seeking a habitual felony offender sentence. As acknowledged by the parties, Petitioner raised these grounds in his Rule 3.850 motion. The post conviction court denied the Rule 3.850 motion with respect to these claims, stating in pertinent part:

> A review of the record reflects that the Defendant was served with the State's Notice of Intent to Classify the Defendant as an Habitual Felony Offender (HFO) on June 29, 2005. (Exhibit "C.") During open court on that date, the State announced the significance of HFO status by stating, "Yes, Judge. This expose[s] the Defendant to twice as much time as allowed under the degree of the statute thereby exposing this Defendant to ten years in the Florida State Prison . . . ." (State's Response, Exhibit B, page 9.) Further, this Court reiterated this point by explaining to the Defendant,
>
>> "That's a third degree felony also, Mr. Moore, so you are facing two third-degree felonies punishable by up to five years in state prison, and the prosecutor has just filed what's called an habitual offender notice which means if you are convicted and if you are found to be a habitual offender, you could be

8

>> sentenced to serve up to ten years in prison on these charges, do you understand that?"
>
> (State's Response, Exhibit C, page 13.) The Defendant replied, "Yes, sir." (State's Response, Exhibit C, page 13.) Additionally, the court records show that the Defendant was served with the State's Third Amended Notice of Intent to Classify the Defendant as an Habitual Felony Offender in open court on November 23, 2005. (Exhibit "D.") Finally, in the Defendant's own pre-plea, pro se "Motion to Disqualify Judge," he indicated an awareness of the consequences of HFO classification. (Exhibit "E.") Thus, the record reflects that the Defendant was fully aware of the consequences of habitualization and that he was subject to habitualization. As such, the Defendant's first two grounds are without merit, and are therefore denied.

Resp. Ex. G at 373-74. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of these claims are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of these claims were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of these claims.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of these claims are not entitled to deference under AEDPA, Petitioner's claims are still without merit. The record reflects the following facts. In Petitioner's June 14, 2005 pro se Motion to Disqualify Judge, he wrote of "his fear" of an unfair trial and an enhanced sentence through habitualization, see Resp. Ex. B at 43, thus reflecting his awareness, during the early stages of his case, of the possibility for habitualization. Since Petitioner had been convicted of grand theft on October 24, 2003, and had been sentenced as a habitual felony offender, see id. at 117-22, and was incarcerated within the custody of the Florida Department of Corrections to serve that sentence,[5] he knew of the ramifications of a habitual felony offender classification.

On June 29, 2005, in open court, Assistant State Attorney Simak served Petitioner and his counsel with the State's Notice of Intent to Classify the Defendant as a Habitual Felony Offender. Resp. Ex. B at 48; Resp. Ex. G at 257. On that date, the trial judge acknowledged the State's intent to seek to classify Petitioner as a habitual felony offender and requested that the

---

[5] See http://www.dc.state.fl.us/ActiveInmates.

10

State announce on the record the significance of the State's notice. Resp. Ex. G at 256. The prosecutor responded:

> Yes, Judge. This exposes the defendant to twice as much time as allowed under the degree of the statute thereby exposing this defendant to ten years in the Florida State Prison as opposed to five years in the Florida State Prison.

Id. The trial judge reiterated the information and explained the following to Petitioner:

> [Y]ou are facing two third-degree felonies[6] punishable by up to five years in state prison, and the prosecutor has just filed what's called an habitual offender notice which means if you are convicted and if you are found to be a habitual offender, you could be sentenced to serve up to ten years in prison on these charges, do you understand that?

Id. at 260. Petitioner acknowledged that he understood. Id.

Additionally, the State served Petitioner with the State's second Notice of Intent to Classify the Defendant as a Habitual Felony Offender in open court on November 23, 2005, well before he entered his guilty plea on December 30th; however, no transcript of that November 23rd hearing is available. Resp. Ex. B at 103; Resp. Ex. G at 262. Nevertheless, after Petitioner entered the plea, the State served the Third Amended Notice of Intent to Classify

---

[6] The State initially charged Petitioner with three counts; the first two counts were third degree felonies, and the third count (resisting an officer without violence to his or her person) was a first degree misdemeanor. See Resp. Ex. B at 11-12; Resp. Ex. G at 259-60.

Defendant as a Habitual Felony Offender on January 23, 2006, which was prior to the sentencing on March 1, 2006. Resp. Ex. B at 123. Petitioner acknowledged, at sentencing, that he recalled the State reading that notice into the record on February 27th. Sentencing Tr. at 262. Indeed, the record reflects that, prior to the plea, Petitioner was fully aware of the State's intent to seek habitual felony offender classification and the consequences of being classified and sentenced as a habitual felony offender.

To pass constitutional muster, a guilty plea must be entered knowingly, intelligently, and voluntarily "with sufficient awareness of the relevant circumstances and likely consequences." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (citation and quotations omitted). A guilty plea entered by a defendant who is fully aware of the direct consequences of his plea must stand unless shown to have been induced by threats or misrepresentation. Brady v. United States, 397 U.S. 742, 755 (1970) (citation omitted). A defendant need not be informed about collateral consequences of his plea, and failure to so inform him does not render the plea involuntary. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); McCarthy v. United States, 320 F.3d 1230, 1234 (11th Cir. 2003) (stating that neither the court nor counsel is

"constitutionally required" to make a defendant aware of collateral consequences of a plea).

Understanding his options, Petitioner Moore ultimately made the decision to forego a jury trial and enter a plea of guilty. See Plea Tr.; Resp. Ex. B. As a result, the trial judge sentenced Petitioner, as a habitual felony offender, to eight years of incarceration on each count, to run concurrently to each other. Sentencing Tr. at 264; Resp. Ex. B at 144-52. In view of the record, this Court finds that Petitioner voluntarily, knowingly, and intelligently entered the guilty plea with a full understanding of the nature of the charges, the minimum and maximum possible sentences, and the consequences of the guilty plea, including the State's seeking to classify him as a habitual felony offender and sentence him to up to ten years of imprisonment.[7] See Plea Tr.; see also Resp. Ex. B at 48, 103; Sentencing Tr. at 249.

---

[7] The failure to inform a defendant of a collateral consequence of a plea cannot render a plea involuntary. Brown v. State, 943 So.2d 899, 901 (Fla. 5th DCA 2006) ("A collateral consequence of a plea is a consequence that does not have a definite, immediate, and largely automatic effect on the range of the defendant's punishment."). Here, the issue of his eligibility for early release or parole is a collateral matter, and therefore, not one upon which Petitioner can base a challenge to the voluntary and knowing nature of his guilty plea. See Johnson v. Dees, 581 F.2d 1166 (5th Cir. 1978) (per curiam) (holding that the trial court's failure to inform petitioner that he would not be eligible for parole and that he could be denied "good time" as a serious multiple offender did not preclude the entry of a voluntary and intelligent guilty plea since such matters concerned collateral consequences).

13

Moreover, to the extent that Petitioner claims his habitual felony offender sentence is illegal due to the trial court's lack of subject matter jurisdiction, such a claim presents an issue purely of state law that is not cognizable on federal habeas review.  The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[8]  Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991).  Petitioner's habitual felony offender sentence does not violate the United States Constitution. Upon consideration of the foregoing, the Amended Petition will be denied, and this case will be dismissed with prejudice.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1))

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district

---

[8] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a).

court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition (Doc. #11) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of April, 2011.

MARCIA MORALES HOWARD
United States District Judge

sc 4/25
c:
Dennis James Moore
Ass't Attorney General (Heller)